

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2007

# Tan v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4715

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Tan v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1349.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1349

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4715
_____

TOEN LIK TAN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

Petition for Review of a Final Decision of the
Board of Immigration Appeals
(BIA No. A96-203-298)
Immigration Judge: The Honorable Rosalind K. Malloy
_____

Submitted Under Third Circuit LAR 34.1(a)
March 27, 2007

Before: FISHER, JORDAN and ROTH, *Circuit Judges*.

(Filed April 5, 2007)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Toen Lik Tan, a citizen of Indonesia, petitions for review of the final order of removal by the Board of Immigration Appeals ("BIA") denying his application for asylum, his application for withholding of removal, and his application for protection under the Convention Against Torture ("CAT"). Tan has since waived his application under the CAT. Regarding his other applications, Tan argues that the BIA and the Immigration Judge ("IJ") misapplied the law in deciding not to consider his untimely asylum application and in evaluating his evidence of past persecution. Tan also argues that his due process rights were violated because the IJ, in evaluating Tan's credibility, allegedly considered certain documents without providing Tan a meaningful opportunity to respond to them. For the following reasons, we will deny the petition.

I.

Tan, a native Indonesian of Chinese descent, entered the United States as a visitor in September 1998. On April 1, 2003, Tan received a notice to appear in removal proceedings for staying in the United States after the expiration of his visitor status. He filed an asylum application on July 15, 2003.

In response to questions about the five-year delay in applying for asylum, Tan testified that he relied on advice from an assistant at the law firm handling the asylum application of his fiancee. According to Tan, that assistant told him and his fiancee that the fiancee's asylum application, if approved, would also serve as an application for him.

Tan's fiancee received asylum in May 2000. When asked why, after they were married in June 2001, they delayed in filing a relative petition to secure asylum for Tan, Tan's wife testified that she knew a petition needed to be filed, but that they were having marital problems.

In support of his applications, Tan testified about several instances of alleged past persecution against him and his family, based on their ethnicity and religion. First, Tan stated that he had to attend private school as a child, because his parents knew that the government would not have allowed a Chinese student to register in public school. Later, in secondary school, some of his teachers made derogatory remarks about the Chinese and punished him more severely than non-Chinese students. Second, Muslim neighbors complained about Christian prayer meetings at Tan's house and threw stones at the house, injuring one of Tan's friends. Third, in 1997, after Tan was involved in an automobile accident, the local police, using ethnic slurs, threatened Tan with jail and demanded money before returning his car. Fourth, in February 1998, Tan and a Chinese coworker were robbed and beaten by Indonesians, who also used ethnic slurs. Tan was hospitalized for his injuries. Fifth, after Tan arrived in the United States in 1998, his aunt and brother in Indonesia were robbed, and bystanders refused to help them because they were Chinese. The robbers allegedly nearly killed the aunt after cutting her arm with a knife.

During cross-examination, Tan was questioned about discrepancies between his testimony and an affidavit submitted by his brother in support of the brother's asylum

application. Specifically, the statements were inconsistent concerning some of the circumstances claimed about prayer meetings at their home and the attack on their aunt.

The IJ denied Tan's applications. According to the IJ, Tan failed to demonstrate extraordinary circumstances that would justify waiving the filing deadline for his asylum application. Tan was therefore ineligible for asylum. As to the application for withholding of removal and the CAT application, the IJ considered the evidence presented by Tan and concluded that, even taking Tan's account as true, the incidents did not rise to the level of persecution. Therefore, the IJ concluded that Tan had failed to establish a clear probability[1] that he would be persecuted on his return to Indonesia and that he was accordingly ineligible for withholding of removal. The IJ also concluded that Tan had failed to show that it was more likely than not that he would be tortured on his return and that he was therefore ineligible for relief under the CAT.

On September 22, 2005, the BIA adopted and affirmed the IJ's decision, specifically agreeing that Tan was not eligible for asylum because his application was untimely and that Tan's testimony, even if credible, failed to establish his eligibility for other relief. Because the BIA adopted the IJ's decision, we review the decision of the IJ. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001).

-----

[1]In her decision, the IJ stated that Tan was not eligible for withholding of removal because he had failed to show that he would "more likely than not" be persecuted on his return to Indonesia. That standard is equivalent to the "clear probability" standard. *INS v. Stevic*, 467 U.S. 407, 424 (1984) ("The question under that [clear probability] standard is whether it is more likely than not that the alien will be subject to persecution.").

## II.

Tan argues that the IJ erred as a matter of law in the analysis of Tan's untimely asylum application. That argument misunderstands the basis of the IJ's decision.

An alien must file an asylum application within one year of the alien's arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). A late application may be considered if there are "extraordinary circumstances relating to the delay in filing ... ." 8 U.S.C. § 1158(a)(2)(D). Importantly, this Court lacks jurisdiction to review a decision about the timeliness of an asylum application, unless the petitioner raises "constitutional claims or questions of law." *Sukwanputra v. Gonzales*, 434 F.3d 627, 633-34 (3d Cir. 2006).

Tan testified that his late filing should be excused because he relied on the advice of a legal assistant handling his fiancee's asylum case. According to Tan, because the advice was given by a legal assistant, not a lawyer, the IJ committed legal error by interpreting his testimony as a claim of ineffective assistance of counsel. Tan argues that, as a result, the IJ improperly required Tan to abide by the procedures that accompany a claim of ineffective assistance of counsel. But while it is true that certain procedural requirements must be met for a claim of ineffective assistance of counsel to constitute extraordinary circumstances justifying a late filing, *see* 8 C.F.R. § 208.4(a)(5)(iii), Tan's argument does not present a constitutional claim or question of law in this instance because it does not address the actual basis of the IJ's decision.

5

Contrary to Tan's argument, the IJ did not refuse to consider Tan's testimony because Tan failed to follow the procedures for claiming ineffective assistance of counsel. Rather, the IJ simply noted that those requirements were not followed but then considered whether the advice given to Tan was an extraordinary circumstance justifying a waiver of the filing deadline. In short, the IJ did not make the legal conclusion about ineffective assistance of counsel that Tan contends was improper. Instead, the actual decision reached by the IJ, after a review of what occurred, was that there was simply no justification for waiving the deadline.

III.

Regarding his application for withholding of removal, Tan argues that the IJ erred by failing to consider the cumulative effect of the incidents of alleged past persecution presented by Tan.

Tan frames this as a legal argument, apparently based on the fact that the IJ did not discuss the "cumulative harm theory" as set forth in the Handbook on the Procedures and Criteria for Determining Refugee Status, issued by the Office of the United Nations High Commissioner for Refugees ("UNHCR Handbook"). The UNHCR Handbook, however, "is not binding on the INS or American courts." *Abdulai*, 239 F.3d at 553. Thus, Tan has failed to raise a legal issue.

Tan also appears to argue that, because the incidents he described, particularly the physical attacks on him and his aunt, were severe and motivated at least in part by their

Chinese ethnicity, the IJ erred in concluding that the incidents were not persecution. The IJ's decision must be upheld if it is supported by substantial evidence. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). "A BIA decision can only be reversed if the evidence is such that a reasonable factfinder would be compelled to conclude otherwise." *Chavarria v. Gonzales*, 446 F.3d 508, 515 (3d Cir. 2006).

Here, the evidence does not justify reversing the IJ's conclusion that Tan was not subjected to past persecution. To support withholding of removal, persecution must be "'on account of' one of five enumerated grounds: 'race, religion, nationality, membership in a particular social group, or political opinion.'" *Lie v. Ashcroft*, 396 F.3d 530, 535 (3d Cir. 2006) (citing 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13(b)(1)). Tan argues that the attacks suffered by him and his aunt were motivated in part by their race and religion. The IJ, however, concluded that those attacks, as well as the alleged police extortion, were crimes rather than persecution on account of ethnicity and religion. Tan has failed to demonstrate that the evidence compels a contrary interpretation. *Cf. id.* (concluding that the BIA had substantial evidence to conclude that robberies, although accompanied by ethnic slurs, were motivated by money). Thus, the IJ's finding that past persecution did not exist must be upheld.

In addition, we must uphold the IJ's finding that Tan had failed to establish that it is more likely than not that he would be persecuted upon return to Indonesia. Indeed, the reasonableness of Tan's fear of future persecution, which he relied on to support his

7

untimely asylum application, is diminished given that most of his family continues to live in Indonesia and that his mother plans to return there because "it would be safe." *See Lie*, 396 F.3d at 537 ("[W]hen family members remain in petitioner's native country without meeting harm ... the reasonableness of a petitioner's well-founded fear of future persecution is diminished.") (citation removed). Similarly, those facts undercut Tan's claim that it is more likely than not that he would be persecuted on his return to Indonesia.

## IV.

Finally, Tan argues that his due process rights were violated during his hearing, because the IJ relied on his brother's affidavit in considering Tan's credibility, and allegedly did so without having given Tan notice that the affidavit would be in the record and without allowing Tan's brother to testify in response. We need not address the circumstances of the hearing, however, because to successfully raise a due process claim, Tan must first show that he was substantially prejudiced by the alleged procedural violation. *Avila-Macias v. Ashcroft*, 328 F.3d 108, 114-15 (3d Cir. 2003). Here, the IJ and the BIA expressly stated that even if Tan were credible he was not eligible for relief. Therefore, because neither the IJ nor the BIA relied on an adverse credibility determination, Tan was not prejudiced, and his due process argument fails.

## V.

For the foregoing reasons, we will deny the petition for review.